Dick man, 5.
The question of construction involved in this case, grows out of item first of the will of Finley Collins, which reads as follows:—
*361 “ I give and devise to my beloved wife in lieu of her dower, the farm on which we now reside, situate in Brook-field township, Noble county, Ohio, and also seventy-seven acres, more or less, situate in Spencer township, Guernsey county, Ohio, in all, three hundred and sixty acres, more or less, during her natural lifetime; and all the household goods that I am in possession of at my decease, are to remain in the possession of my widow during her lifetime. At the death of my said wife, the real estate aforesaid, and such part of my household goods as may then remain unconsumed and unexpended^ I give and devise to my two sons, Silas and William Collins, and their heirs. If, however, either of my said two sons should die, leaving no children at their decease, then the share of said property above devised to such deceased son, is to go into the possession of the surviving son. If, in case both of my two sons, Silas and William Collins, should die leaving no heirs, then the property above described to be equally divided among my heirs.”
It is claimed on the part of William Collins, the plaintiff in error, that by the will of his father, he and his brother Silas each took a vested remainder in fee simple in one undivided half of the lands, defeasible upon the contingency of the death of either, leaving no children at his decease, and leaving the other brother to survive him. It is contended however in behalf of the children of Silas Collins, that the testator intended to create and did create an estate tail, and that they will inherit in fee, the estate set off to William by partition, should he die leaving no children. We do not so construe the words of the will. The testator in the first instance gave to his wife a life estate in the homestead farm. At her death, he devised the real estate so given to her, to his two sons Silas and William Collins “and their heirs.” If we pause at this point, and do not consider the subsequent clauses of item first of the will, there can be no doubt as to the meaning of the language of the instrument, or as to the intention of the testator. The two sons, in plain and unmistakable *362 terms, each took a vested remainder in fee simple in one undivided half of the lands, determinable however upon a certain event. The words of inheritance used to vest the estate in the sons, standing alone, are to receive that construction and interpretation, which a long series of decisions has attached to them, unless it is very certain they were used in a different sense, and there is no pretence of such certainty in the present case. The fee simple' devised was not indefeasible, but subject to be divested upon the contingency expressed. In the event that either of the sons should die leaving no children at his decease, his share of the property was to pass into the possession of the surviving brother. The survivor would take the propert}r, after the determination of the estate in fee simple by way of executory devise. But Silas having died, leaving at his decease two sons, his only children and heirs at law, the contingency upon which his vested remainder in fee simple would be divested, became impossible, and his children are now the owners in fee, of the moiety of the lands which was set off to them in the partition proceedings. Moreover, while the death of Silas, leaving children at his decease, fixed the title of his share of the lands in his offspring, and thus destroyed the limitation over, that event had the effect of relieving William’s vested remainder in fee simple, from a liability to be defeated. If William should die, leaving children at his decease, no one could question their right, as heirs at laAV, to a fee in their father’s share. And if he should die without leaving children at his decease, there would be no surviving brother, as designated in the Avill, who could take possession of his share by way of executory devise. No contingency provided for by the testator, can uoav arise, which can curtail the fee. simple estate of William, as vested by the plain and concise words of his father’s will. Following the well-settled rules for the interpretation of wills — for the construction of written instruments — and searching for the testator’s intention in the language contained within the “ four corners ” of his will, we can find no satisfactory reason for suppleme uting the *363 words “ go into the possession of the surviving son ” with the words “or his children,” or other equivalent words not used by the testator. And it is only by thus supplying language, upon the assumption of its intended use by the testator, that the children of Silas can make good their claim to the lands set off to William, upon the event of his dying without leaving children at his death. Furthermore, while there can be no “surviving son” in the person of Silas, into whose possession William’s moiety of the lands can go, the contingency upon which it might go to the heirs of the testator, has become impossible. The death of both Silas and William, leaving no heirs, is an event which can never occur, and hence the provision of the will for dividing among the heirs of the testator the real estate described in item first has become entirely inoperative.
The manifest intention of the testator was that his two sons, William and Silas, should together occupy the farm, and equally enjoy its avails during their joint lives. And with this in view he bequeathed to them all his stock of every kind, with all the farming utensils of every description of which he might be possessed at the time of his decease, and also such part of his household goods as might remain unconsumed and unexpended at the demise of his wife. He was doubtless aware that if either of the two sons should die, leaving children, a partition of the farm would become expedient if not absolutely necessary, and in such an emergency as the children would become the absolute owners of their ■ father’s share, a sense of justice and a desire for impartiality as between the two sons would prompt him to vest in his surviving son an estate equal in quantity to that of the brother’s children. And such indeed was the operation of his will — it being so drawn that by the death of Silas, with children surviving him, the instrument became inoperative as to its subsequent limitations, and per force gave a fee simple to William.
It would, therefore, be a forced construction to hold that the testator by his will" created an estate tail in William and Silas. Estates tail are not favored in this country, but are *364 in fact, either prohibited or, as in our own state, very essentially limited and curtailed. The presumption is against the intention to create them, and that presumption must be overcome by language entirely free from ambiguity. It is insisted that the testator, when he made the devise to “ Silas and William Collins and their heirs,” intended “heirs of their bodies,” or “their children”; and that in providing that the property “devised to such deceased son is to go into the possession of the surviving son,” he meant the surviving son or “ his children,” thus giving William’s share to the issue of Silas in the event of William’s death without children. As we have hereinbefore in effect said, such an interpolation of language and such a departure from the legitimate import of words are not necessary to a proper construction of the will, and are not to be resorted to unless authorized — as they are not in this case — by the clearly expressed intention of the testator. If he had designed to give the two sons only a life estate with limitations over, it would have been very easy to use the ordinary language adapted to that purpose. When devising the farm to his widow, “during her natural lifetime,” the testator failed not to use the appropriate words for such a devise. That he did not ignore the word “ heirs ” as a word of inheritance absolute, is evident from the fact that in his bequests of pecuniary legacies it is omitted because unnecessary, while it is employed when he wishes to give the stone-house and lot in fee simple to his daughter Maria Barnes.
In our view, by clear and unequivocal terms in the second clause of the first item of the will, William took a vested remainder in fee simple in one undivided half of the homestead farm; and, as the contingency upon which his estate might be divested became impossible, it cannot be cut down to a life estate by any construction given to the subsequent clauses. As held in the case of Thornhill et al. v. Hull, 2 Clark & Finn., 22. “It is a rule of the courts, in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument *365 in clear and decisive terms, such interest or estate can not be taken away or cut down'by raising a doubt upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate.”
The judgment of the court of common pleas must be reversed, and the will construed as prayed in the petition and cross-petitions.

Judgment accordingly.